PEOPLE v. MOTELLO.

(Supreme Court, Appellate Division, Second Department. June 27, 1913.)

1. HOMICIDE (§ 139*)—INDICTMENT—DEGREE.
   The charging common-law language of an indictment, including the words "willfully, feloniously and of malice aforethought," though sufficient to sustain an indictment for murder in the first degree, is as appropriate for the crime of murder in the second degree.
   [Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 232–235; Dec. Dig. § 139.*]

2. HOMICIDE (§ 129*)—INDICTMENT—MALICE.
   In an indictment for murder, the words "willfully, feloniously and of malice aforethought" could not be regarded as surplusage, where there were no equipollent words in the indictment, but were essential to a common-law charge of murder.
   [Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 197, 198; Dec. Dig. § 129.*]

3. HOMICIDE (§ 139*)—INDICTMENT—MANSLAUGHTER.
   An indictment for murder omitting the term "murder of his malice aforethought" will be deemed an indictment for manslaughter only.
   [Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 232–235; Dec. Dig. § 139.*]

4. INDICTMENT AND INFORMATION (§ 159*)—AMENDMENT—COMMON LAW.
   At common law no amendment could be made to an indictment, and such an amendment is not within the purview of Code Cr. Proc. § 293, which is expressly limited to variance between allegations and proof in respect to time or in the name of any place, person, or thing.
   [Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 505–514; Dec. Dig. § 159.*]

5. INDICTMENT AND INFORMATION (§ 159*)—AMENDMENT—POWER OF COURT.
   In view of Const. art. 1, § 6, providing that no person shall be held to answer for a capital or otherwise infamous crime unless on indictment of a grand jury, the trial court on a trial for murder in the second degree had no power over objection to strike from the indictment the words "willfully, feloniously, and of malice aforethought," since such amendment substantially changed the bill found by the grand jury; it being immaterial that the effect of such amendment was to change the indictment from murder to the lesser degree of manslaughter.
   [Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 505–514; Dec. Dig. § 159.*]

6. CRIMINAL LAW (§ 170*)—FORMER JEOPARDY—NEW TRIAL AFTER REVERSAL.
   Where an act of the trial court in a trial for murder in the second degree in striking from the indictment the words "willfully, feloniously, and of malice aforethought" was beyond its power, its attempt to change

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the indictment did not destroy it, and after reversal of a conviction for error in the trial without disturbance of the indictment it remains as found and untried, and the defendant may be brought to trial perforce of the power lodged in this court upon the hearing of such appeal without impairment of his constitutional rights.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 312–321; Dec. Dig. § 170.*]

Appeal from Orange County Court.

Pasquale Motello was convicted of murder in the second degree, and appeals. Reversed, and new trial ordered.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

Henry Kohl, of Newburgh, for appellant.

J. D. Wilson, Jr., Dist. Atty., of Newburgh, for the People.

JENKS, P. J. [1] The question of murder in the first degree is not in the case. The charging common-law language of the indictment might well be held sufficient to sustain an indictment for that crime, but the language is as appropriate for the crime of murder in the second degree. People v. Osmond, 138 N. Y. 80, 33 N. E. 739; People v. Giblin, 115 N. Y. 196, 21 N. E. 1062, 4 L. R. A. 757; Fitzgerrold v. People, 37 N. Y. 413; People v. Conroy, 97 N. Y. 62. The defendant was arraigned, tried, and convicted for murder in the second degree in a court of jurisdiction, and under a charge of correct instruction as to the elements of the crimes of which he could be convicted under the indictment.

[2] But I think that there was a fatal error in the trial. The crime was charged to have been committed "willfully, feloniously, and of malice aforethought." At the beginning of the trial, the assistant district attorney moved that the indictment be amended by striking out the words "malice aforethought," and his motion was granted over the objection of the defendant. The words stricken out could not be regarded as surplusage, for there were no equipollent words in the indictment. They were essential to a common-law charge of murder.

[3] In People v. Enoch, 13 Wend. 159–173 (27 Am. Dec. 197), the Chancellor says:

"Thus, in an indictment for murder, the terms 'murder of his malice aforethought' are considered absolutely necessary in describing the offense; and, if these words are left out of the indictment, it will be deemed a case of manslaughter only."

See, too, the comments of Denio, J., in Darry v. People, 10 N. Y. at page 149; Bishop's New Criminal Procedure, 544–563, 564, 600 [2]; Wharton's Criminal Law (11th Ed. [Kerr]) §§ 418–420, 422, 428; Russell on Crimes (7th Eng. Ed.) p. 655; Commonwealth v. Webster, 5 Cush. (Mass.) 295, 52 Am. Dec. 711; People v. Clark, 7 N. Y. 385. Conceding that such power of amendment was in the court, then the defendant stands convicted of the crime of murder under an indictment for manslaughter. But I am clear that the court had not this power.

[4] At common law no amendment could be made to an indictment. People v. Herman, 45 Hun, at page 177, and authorities cited; Washburn's Manual of Criminal Law, 134, and authorities cited. Such an amendment was not within the purview of the statute (section 293, Code of Criminal Procedure), which is limited expressly to variances between allegations and proof in respect to time or in the name of any place, person, or thing.

[5] In effect, this amendment changed substantially the bill found by the grand jury, and therefore was beyond the power of the court, especially in the face of the objection of the defendant. Bishop's New Crim. Proc. §§ 96, 97, 560, 561; Ex parte Bain, 121 U. S. 1, 7 Sup. Ct. 781, 30 L. Ed. 849; People v. Poucher, 30 Hun, 576; People v. Trank, 88 App. Div. 296, 85 N. Y. Supp. 55; State v. Startup, 39 N. J. Law, 423. It matters not that the effect of such amendment was to change the indictment from murder to the lesser crime of manslaughter, for the reason that the principle violated rests, not upon the effect of the amendment, but upon the fact of any amendment. The reason for the rule as stated by the court in Ex parte Bain, supra, is that upon amendment the indictment is no longer that of the grand jury, and therefore there arises a violation of article 5 of the Constitution. See, too, section 6, art. 1, of the Constitution of the state of New York. And the court in Bain's Case say in comment:

"Any other doctrine would place the rights of the citizen, which were intended to be protected by the constitutional provision, at the mercy or control of the court or prosecuting attorney; for, if it be once held that changes can be made by the consent or the order of the court in the body of the indictment as presented by the grand jury, and the prisoner can be called upon to answer to the indictment as thus changed, the restriction which the Constitution places upon the power of the court, in regard to the prerequisite of an indictment, in reality no longer exists."

I note that in Bain's Case it is said that one of the avowed reasons that moved the judge at circuit to allow the amendment was "that no injury was done to the prisoner by allowing such change to be made."

[6] I think that there must be a reversal of the judgment without further consideration of the case. But I am of opinion that a new trial may and should be ordered. It cannot be said that, because the court was powerless to permit the amendment, therefore the trial was legally upon the indictment found. Ex parte Bain, supra. If the trial court was powerless to change the indictment, the vain attempt to change it should not be effective to destroy it. This would be an illogical, a mischievous, and perhaps a dangerous doctrine. The legal condition of the defendant is, I think, indicated by the Court of Appeals in People v. Palmer, 109 N. Y. at page 419, 17 N. E. 213, 4 Am. St. Rep. 477. He has appealed and asked for a reversal of the judgment of conviction. We have reversed that judgment for error in the trial without disturbance of the indictment. Such a reversal, to adopt the theory of the Court of Appeals, annuls and expunges the judgment and the record of the former trial as if they had never been. But the indictment remains as found and untried, and the defendant may now be brought to trial perforce of the power lodged in this court upon the hearing of such an appeal, and without impairment of his

constitutional rights.   People v. Palmer, supra.   In the language of
Gray, J., speaking for the court in the case last cited:

"It would be a grievous miscarriage of justice, and the intent of the law
would be thwarted, if it should be held that a reversal, upon a prisoner's ap-
peal for errors of law upon his trial, had the effect of putting it out of the
power of the People to further try him under the indictment, when his guilt
might be competently established.   We do not think such is the result."

Such was the procedure that was followed in People v. Poucher, su-
pra. ·

The judgment of conviction of the County Court of Orange county
is reversed, and a new trial is ordered upon the indictment as found
by the grand jury.   All concur.